UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALEXANDER WARD,

          Plaintiff,

    v.

ICICLE SEAFOODS, INC., et al.,

          Defendants.

CASE NO. C06-431JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on Plaintiff's motion to compel maintenance and cure (Dkt. # 11). For the reasons stated below, the court GRANTS the motion in part and DENIES it in part.

## II. BACKGROUND

Plaintiff Alexander Ward served as a fish processor aboard the F/V NORTHERN VICTOR a ship owned by Defendant Icicle Seafoods, Inc. ("Icicle"). Early on the morning of September 20, 2005, one or more of Mr. Ward's fellow crew members assaulted him while he was sitting on a bench waiting for his shift to begin. The following day, Mr. Ward received treatment at Iliuliuk Clinic in Dutch Harbor for a fractured nose and, according to Mr. Ward, lacerations across his forehead that required sutures. Soon thereafter, he returned to his home in San Diego and once there, departed for Mexico to recuperate.

ORDER – 1

According to Mr. Ward, he suffered and continues to suffer from painful headaches as a result of the assault. Initially, Mr. Ward resorted to over-the-counter medication, hoping that his pain would lessen with time. His self-treatment appeared to work in the short-term. Indeed, when Icicle's insurance adjustor emailed Mr. Ward in November to explain that he could visit a doctor for his condition, Mr. Ward told the adjustor that he "was doing much better since the inciden[t]" and that his pain had "subsided." Ward Decl., Ex. C. By March 2006, however, Mr. Ward contends that his headaches worsened. Ward Decl. ¶ 8. On a personal trip to Seattle from San Diego in late March, Mr. Ward presented to the emergency room of Harborview Medical Center complaining of severe headaches. Harborview staff referred him to neurologist Dr. Arthur Ginsberg who assessed Mr. Ward's condition as concussion-related, prescribed pain medication, and recommended that Mr. Ward undergo various testing, including an Magnetic Resonance Imaging scan. Moran Decl., Ex. E. Mr. Ward returned to San Diego and followed up with a local provider, Dr. Bruce Lasker.

Mr. Ward now moves to compel maintenance and cure payments starting from the date of his injury (September 20, 2005) until the point in time that he reaches maximum cure. Mr. Ward also moves for attorneys' fees incurred as a result of bringing the instant motion. In a supplemental response, Icicle indicates that it commenced paying maintenance and cure for an undisclosed amount as of the date of Mr. Ward's visit to Dr. Lasker on May 24, 2006. Icicle continues to oppose Mr. Ward's claim for maintenance and cure for the time period between Mr. Ward's date of injury and his visit to Dr. Lasker, or approximately 8 months.

### III.  ANALYSIS

A shipowner's obligation to provide maintenance and cure has its roots in ancient maritime law. Vaughan v. Atkinson, 369 U.S. 527, 532 n.4 (1962). When a seaman is

ORDER – 2

injured in service of his vessel, the shipowner has an obligation not only to bring the seaman to a port for treatment, but to pay maintenance (compensation for room and board equivalent to what the seaman would have received aboard the vessel) and cure (payments for medical treatment necessary to restore the seaman to health).  Id.; see also MARTIN J. NORRIS, THE LAW OF SEAMEN §§ 26:5-26:6 (3d ed. 1985).  Maintenance and cure are available even where the shipowner is not at fault for the seaman's injury in the service of the vessel.  Aguilar v. Standard Oil Co., 318 U.S. 724, 730-31 (1943).  Moreover, the seamen need not show that he was under a physician's constant care during the time period of his disability.  See, e.g., Seville v. United States, 163 F.2d 296, 299 (9th Cir. 1947) (reasoning that mere rest and disuse of sprained wrist constituted medical treatment); Triantafilos v. United States  87 F. Supp. 965, 966 (D.C. Penn. 1949) (reasoning that self-treatment constituted medical treatment).  A seaman's entitlement to maintenance and cure continues until he reaches "maximum cure" – a recovery as complete as the injury allows.

   Here, Mr. Ward has put forth sufficient evidence supporting each element of his claim to maintenance and cure.  There is no dispute that at least one fellow crew member assaulted Mr. Ward aboard the NORTHERN VICTOR, resulting in an injury.  There is also no dispute that Mr. Ward departed the vessel and presented to the Iliuliuk Clinic where he received diagnosis, treatment, and instructions memorialized in illegible doctor's script.  Opp'n., Ex. J.  The fact that Mr. Ward administered self-care and did not seek professional medical treatment again until his condition worsened in March of 2006 does not relieve Icicle's obligation to pay Mr. Ward's maintenance.  See Seville, 163 F.2d at 299.  There is no evidence that Mr. Ward's headaches ceased – only that his headaches improved over the first few months following the assault.

ORDER – 3

Icicle argues at length that Mr. Ward's claim fails because various witness statements and accident reports conflict with Mr. Ward's version of events. The court finds these factual disputes (e.g., whether Mr. Ward's attacker(s) used fists as opposed to a blunt object) immaterial to the question of whether Mr. Ward is entitled to maintenance and cure. Icicle further argues that Mr. Ward's allegedly skewed version of events taints the ability of his medical providers to properly diagnose his condition as related to the assault. Icicle does not provide any evidence in support of this contention, and moreover, appears to abandon this argument given its recent commitment to pay Mr. Ward's medical bills. In any case, the court resolves such a dispute in Mr. Ward's favor. See Connors v. Iqueque U.S.L.L.C., 2005 A.M.C. 2154 (W.D. Wash. 2005) (declining to impose rigid summary judgment standard to pretrial motion to compel maintenance and cure) (citing Vaughan, 369 U.S. at 532 ("When there are ambiguities or doubts, they are resolved in favor of the seamen.")).

Accordingly, the court orders Icicle to pay maintenance and cure from September 22, 2005 through May 24, 2006 and denies as moot Mr. Ward's request for payment after May 24, 2006. On the record before the court, it is unclear whether the parties have reached an agreement as to an appropriate rate of maintenance, and thus, the court declines to reach the issue. The court cautions the parties, however, that if they cannot reach agreement as to an appropriate rate, the court will make a determination based on reasonableness – an amount that is sure to exceed Mr. Ward's contractual rate of $20 per day. See Rutherford v. Sea-Land Service, Inc., 575 F. Supp. 1365, 1370 (N.D. Cal. 1983).

Finally, the court denies Mr. Ward's request for attorneys' fees incurred as a result of bringing the instant motion. Fees are available in instances where the shipowner "willful[ly] and persistent[ly]" withholds maintenance and cure. Glynn v. Roy Al Boat

ORDER – 4

Management Corp., 57 F.3d 1495, 1501 (9th Cir. 1995).  The court finds no willful and persistent withholding here given that Icicle had strong indication from Mr. Ward that he had improved and did not intend to seek medical treatment for several months following the incident.

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES in part Mr. Ward's motion (Dkt. # 11).

Dated this 31st day of July, 2006.

JAMES L. ROBART
United States District Judge

ORDER – 5